IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| MAGLEBY CONSTRUCTION SUN VALLEY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>SP HOTEL OWNER LLC; LONE MOUNTAIN LAND COMPANY LLC; HART HOWERTON PLANNING, ARCHITECTURE & LANDSCAPE ARCHITECTURE, P.C.; THE FIDELITY AND DEPOSIT COMPANY OF MARYLAND; FEDERAL INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; and DOES 1-50,<br><br>Defendants. | CV 22–58–BU–DLC<br><br><br>ORDER |

Before the Court is Defendants' Motion to Dismiss and to Stay Bond Foreclosure Action Pending Arbitration (Doc. 17) and Plaintiff's Motion to Modify Protective Order (Doc. 41). Defendants seek dismissal of Plaintiff Magleby Construction Sun Valley's ("Magleby") Complaint (Doc. 1) pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure. (Doc. 17 at 2.) Defendants further request that Magleby's bond foreclosure action be stayed "until an arbitration decision has been rendered on the existence of any damages." (*Id.* at

1

3.) Plaintiff seeks to modify this Court's protective order, issued April 20, 2023, to remove the redaction provision. (Doc. 41 at 3.) For the reasons discussed below, the Court grants the motion to dismiss and stay bond foreclosure action and denies the motion to modify the protective order.

## BACKGROUND

This action arises out of the development and construction of the Spanish Peaks Lodge Montage Big Sky Resort (the "Resort" or the "Project") in Big Sky, Montana. (Doc. 1 at 2.) Magleby alleges that Defendant SP Hotel Owner LLC ("SP Hotel") is the owner of the real property that is the Resort, (*id.* at 2), Defendant Lone Mountain Land Company LLC is SP Hotel's agent in charge of "the planning, entitlement, building, marketing, and sale" of SP Hotel's real estate in Montana, (*id.* at 4), Defendant Hart Howerton Planning, Architecture & Landscape Architecture, P.C., is the architect for the Project, (*id.* at 2), and Does 1-50 are unknown "design professional hired by, or who performed work by, through or under, one or more of the Defendants," (*id.* at 3). Magleby was subcontracted by Suffolk Construction Company, Inc. ("Suffolk") to perform "exterior building scope work," such as "fabrication and installation of exterior timber wraps and timber solids" for the Project. (*Id.* at 6; *see also* Doc. 18-2.)

Magleby claims that it has not been compensated for its additional work and costs that resulted from the Project's defective designs. (*See* Doc. 1 at 22–27.)

Magleby recorded a construction lien against the Resort property and provided notice to SP Hotel, as prescribed by Montana law. (*Id.* at 25.) SP Hotel then obtained from Defendants Fidelity and Deposit Company of Maryland, Federal Insurance Company, and Liberty Mutual Insurance Company ("Sureties") a bond to release Magleby's lien (the "Bond"), in the amount of $20,736,736.50. (*Id.* at 3, 25). The Montana Eighteenth Judicial District Court, Gallatin County, entered an order substituting the Bond as security for Magleby's construction lien and releasing the Resort property from the lien. (*Id.* at 25.)

Magleby's first cause of action alleges that SP Hotel, as Project owner, "breached its duty in commencing construction work on the Project with inaccurate, unreliable, and uncoordinated Construction Drawings." (*Id.* at 22.) Magleby's next cause of action alleges that SP Hotel was unjustly enriched as a result of Magleby's uncompensated work on the Project that extended beyond the original scope of work. (*Id.* at 23–24.) Magleby's third cause of action is against the bond that Magleby obtained as surety for its construction lien. (*Id.* at 24–25.) Finally, Magleby's fourth cause of action alleges that Howerton and Does 1-50, as Project architect and designers, "breached their duty in providing inaccurate, unreliable and uncoordinated Construction Drawings at the time of bid and commencing construction work on the Project with such drawings." (*Id.* at 26.)

The subcontract between Suffolk and Magleby (the "Subcontract") outlines

the rights and duties between the two signatories as they relate to the Project. Suffolk agreed to pay Magleby for "all work, labor, materials, equipment, taxes, fees and all other matters or amounts arising out of or to be performed or furnished by [Magleby]" under the Subcontract (the "Work"). (Doc. 18-2 at 8 (Arts. 3, 4).)

Article 1 recognizes that the Project's plans "may be amended from time-to-time (as defined in the Subcontract)," (*id.* at 7), and Article 2 also recognizes that adjustments to the work schedule may be authorized, *(id.* at 8). Article 8, § 8.6.1 of the Subcontract outlines Suffolk's right to make changes, including:

> (i) changes in the scope of the Work . . . ; (ii) changes in the Work (including deletions of portions of the Work) ordered by [Suffolk]; or (iii) changes in the Work which occur as a result of [Magleby]'s default in the performance of its obligations under this Subcontract.

(*Id.* at 12.) Article 8, § 8.13 further provides:

> All changes to this Subcontract and all changes in the scope of the Work, except those resulting from [Magleby]'s default in the performance of its obligations under this subcontract, shall be confirmed in a writing signed by [Suffolk] and [Magleby] after the ordering of such change . . . . *Should [Magleby] proceed with any additional work without written direction from [Suffolk] in accordance with the terms and conditions of this Subcontract, [Magleby] does so at its own risk and expense.* If [Suffolk] and [Magleby] are unable to agree on [Magleby]'s entitlement to a time extension or an adjustment to the Subcontract Amount due to a scope change, [Magleby] shall nonetheless proceed immediately with performance of the scope change as provided.

(*Id.* at 17 (emphasis added).)

Magleby may make claims for additional payment or extensions of time if

4

provided to Suffolk "in writing within ten (10) days . . . after the occurrence of the event giving rise to such claim." (*Id.* (Art. 8, § 8.12).) The Subcontract also contains an arbitration clause, which states:

> *Any claims arising out of this Subcontract, including, without limitation, claims for an adjustment to the Subcontract Amount or Time of performance*, which cannot be resolved by negotiation . . . [and] exceed $50,000.00 or where injunctive relief is sought, *shall be submitted to a panel of three arbitrators in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association*, upon [Suffolk]'s election . . . . The results of any arbitration shall be binding on the parties thereto, and shall be enforceable by court order at the request of either party.

(*Id.* at 18 (Art. 8, § 8.16) (emphasis added).)

Defendants argue that the Complaint should be dismissed pursuant to Rules 12(b)(6) and 12(b)(7) because: (1) Magleby failed to join a necessary party—Suffolk—and (2) the Complaint fails to allege facts upon which relief can be granted. (Doc. 18 at 9.) Defendants also move to stay the bond foreclosure action pending arbitration. (*Id.*) The factual background, claims, and pending motion to dismiss in this matter are nearly identical to those in *Yellowstone Electric Co. v. Crossharbor Capital Partners LLC*, Cause No. CV-22-52-BU-DLC, 2023 WL 2424495 (D. Mont. 2023). Both cases involve the same construction project, owners, and general contractor; and, both cases involve sub-contractor claims for additional payment stemming from a contract with Suffolk. In *Yellowstone*, the Court granted the defendants' motion to dismiss under Rule 12(b)(7). 2023 WL

2424495, at *7. The only distinguishing factor between this case and *Yellowstone* is the additional bond claim. Accordingly, this Court will employ the same analysis as in *Yellowstone*.

**DISCUSSION**

When determining whether to dismiss a complaint under Rule 12(b)(6) or 12(b)(7), the Court "must consider all allegations of material fact as true and construed in a light most favorable to the plaintiff." *N. Arapaho Tribe v. LaCounte*, 215 F. Supp. 3d 987, 996 (D. Mont. 2016) (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)). Under Rule 12(b)(7), the Court may also consider extrinsic materials attached to the motion.[1] *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *see also Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

**I.     Rule 12(b)(7)**

A district court may dismiss a complaint pursuant to Rule 12(b)(7) for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). The Court must follow a three-step analysis to determine if dismissal is appropriate under Rule 12(b)(7). First, the Court must determine if the party is "necessary" pursuant to Rule 19. *See Dine Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 851

---

[1] Here, the Subcontract between Suffolk and Magleby was attached to Defendants' motion, (Doc. 18-2), and therefore may be considered under Rule 12(b)(7).

6

(9th Cir. 2019); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985). Second, if the Court determines that the nonparty is required, it must then determine if joinder of the nonparty is feasible. *See EEOC v. Peabody W. Coal Co.,* 400 F.3d 774, 779 (9th Cir. 2005). If joinder is not feasible, the Court must then determine if the party is "indispensable" pursuant to Rule 19(b). *Id.* If the Court reaches the final step of the analysis and concludes that the party is indispensable, then the Complaint should be dismissed. *See id.*; FED. R. CIV. P. 19(b). This analysis is "practical" and "fact specific." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

   **1. Suffolk is a necessary party under Rule 19(a).**

A nonparty is "necessary" if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). Under Rule 19(a)(1)(B), the nonparty's claimed interest must be legally protected, "more than a financial stake[,] and more than speculation about a future event." *Makah Indian Tribe*, 910 F.2d at 558 (internal citation omitted); *see also N. Arapaho Tribe*, 215 F. Supp. 3d at 996. "[A]n

7

interest that 'arises from terms in bargained contracts' may be protected, but . . . such an interest [must] be 'substantial.'" *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 973 (9th Cir. 2008) (quoting *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002)). "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013).

In *Yellowstone* this Court found that Suffolk was a necessary party under Rule 19(a)(1)(B)(i) because Suffolk had a substantial interest in the litigation and its interest would be impaired if not joined as a party. 2023 WL 2424495, at *3. Magleby attempts to distinguish this case from *Yellowstone* on the ground that Defendants would adequately represent Suffolk's interest here. The Court rejected a similar argument in *Yellowstone*, finding:

> Suffolk and Defendants do not have identical interests and therefore Defendants do not serve as an adequate proxy. Even assuming that both Defendants and Suffolk are aligned in thinking that Yellowstone is not entitled to additional compensation, this is not sufficient. As discussed above, the claims arise out of the contract between Suffolk and Yellowstone, to which Defendants are not a party; and as a non-signatory Defendants cannot be said to have the same interest as the parties who bargained for and agreed upon the terms of the contract.

2023 WL 2424495, at *5. However, Magleby has introduced additional evidence and argument relating to the relationship between Defendants and Suffolk that was not before the Court in *Yellowstone*. (Doc. 44.)

8

Magleby has introduced a settlement agreement between SP Hotel and Suffolk relating to claims that Suffolk brought against SP Hotel for work performed on the Project. (*See* Doc. 44-1.) Magleby points to the provision in the settlement agreement regarding a contingency fund for the resolution of claims and suits filed by subcontractors, including Magleby, against Defendants. (Doc. 44 at 8; *see also* Doc. 44-1 at 7.) The provision provides that "Suffolk may access the Contingency Fund for defense and/or resolution of the Magleby Claims, [or] Magleby Lawsuit." (Doc. 44-1 at 7.) Magleby also points to the provision of the settlement agreement stating:

> Suffolk agrees, at Suffolk's sole cost, risk and expense, to defend, indemnify, and hold harmless the Owner, CrossHarbor, LMLC, SP Inn Owner LLC, SP Cabin Owner LLC, Big Sky Investment Holdings LLC, LH SPM Member LLC, CH SP Acquisition LLC, Lighthouse Real Estate Holdings LLC, LH SPM Member LLC and BSIH LH SPM Holdings LLC . . . from and against all claims, causes of action, demands for payment, and suits . . . arising from or in any way related to the Project . . . the Magleby Lawsuit, or the YECO Lawsuit.

(Doc. 44-1 at 8.) The agreement further provides:

> Suffolk shall assume the defense of, and assume all risk, liability, cost and expense arising out of, the Magleby Lawsuit and the YECO Lawsuit. Suffolk shall be solely and exclusively responsible for all aspects of the defense and indemnity, and protection of the interests of all [Defendants] in the Magleby Lawsuit and the YECO Lawsuit.

(*Id.* at 9.) Based on this evidence, and the fact that Defendants' counsel also represents Suffolk, Magleby argues that Suffolk essentially controls the defense in this matter, and therefore, Suffolk's interest is adequately

represented.

However, Magleby's argument fails to distinguish this case from the Court's holding in *Yellowstone*. As explained in *Yellowstone*, "Suffolk's interest is substantial and would be impaired if not joined as a party because resolution of this case would (1) determine [Plaintiff's] right to payment under the Subcontract without involving a signatory to the Subcontract and (2) obviate the arbitration clause that was a bargained for element of the contract." 2023 WL 2424495, at *3. While under the settlement agreement Suffolk must indemnify and defend Defendants in this matter, Defendants have no obligation to defend Suffolk's interest. Moreover, nothing in the settlement agreement strips Suffolk of its rights to enforce the arbitration clause in the Subcontract with Magleby. Therefore, for the same reasons discussed in *Yellowstone*, the Court finds that Suffolk is a necessary party under Rule 19(a).

**2. It is not feasible to join Suffolk.**

In *Yellowstone*, the Court concluded that it was not feasible to join Suffolk due to the arbitration clause. 2023 WL 2424495, at *6. As discussed in that case, application of Rule 19(a) requires this Court to "forecast the future course of this litigation" and respond accordingly. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014). Moreover, the Federal Arbitration Act, 9 U.S.C. § 1

*et seq.*, "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Mortensen v. Bresnan Communs., LLC*, 722 F.3d 1151, 1157–58 (9th Cir. 2013); *see also Stamp v. Gen. Elec. Cap. Corp.*, No. CV 12-123-BLG-DLC, 2013 WL 5755686, at *3 (D. Mont. Oct 23, 2013). Accordingly, like in *Yellowstone*, the Court finds that it is not feasible to join Suffolk as a party to this action due to the arbitration clause in the Subcontract.

### 3. Suffolk is an indispensable party.

A nonparty is indispensable if "in equity and good conscience" the action could not proceed among the existing parties alone. FED. R. CIV. P. 19(b). To make this determination, the Court balances four factors: "(1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." *Kescoli v. Babbitt*, 101 F.3d 1304, 1310–11 (9th Cir. 1996).

In *Yellowstone*, the Court held that, because arbitration was available as an alternative forum for Yellowstone to seek relief, there was no prejudice to Yellowstone if the matter was dismissed. 2023 WL 2424495, at *6. The Court also concluded that relief "[could not] be shaped to lessen prejudice, nor [could] an adequate remedy be awarded without Suffolk, because the relief sought is directly

tied to the amount [Plaintiff] claims it is entitled under the Subcontract. [Thus,] [a]ny recovery from Defendants would be derivative of the amount [the subcontractor] may pursue from Suffolk in arbitration." *Id.* The same reasoning applies here.

For the foregoing reasons, the Court finds that dismissal is warranted under Rule 12(b)(7).

## II.     Rule 12(b)(6)

Because the Court finds that dismissal is warranted under Rule 12(b)(7), dismissal under Rule 12(b)(6) need not be addressed.

## III.    Motion to Stay the Bond Action

Some district courts have opted to stay the federal proceedings, rather than dismiss them, pending resolution of arbitration. *See Tradeline Enterprises Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*, No. LA CV15-08048, 2016 WL 7444857, at *14 (C.D. Cal. July 29, 2016); *WDCD, LLC v. iStar, Inc.*, No. CV 17-00301-DKW-RLP, 2017 WL 5505395, at *2 (D. Haw. Nov. 16, 2017). In order to stay the proceeding, Defendants must specifically request to do so through a motion to stay and/or a motion to compel arbitration. 9 U.S.C. § 3 (stating that the district court may stay a proceeding pending arbitration "upon *application* of one of the parties" (emphasis added)); *see also Hilton v. Midland Funding, LLC*, 867 Fed. Appx. 515, 519 (6th Cir. 2017) ("Vague references to a stay do not constitute a

request for a stay."); *Tradeline*, 2016 WL 7444857, at *1 (staying the action pending arbitration where the defendant *moved to compel arbitration and stay the proceeding* or, in the alternative, dismiss pursuant to 12(b)(7)); *WDCD*, 2017 WL 5505395, at *1 (staying the action where the defendant *moved to stay litigation* under 9 U.S.C. § 3 or, in the alternative, dismiss pursuant to Rules 12(b)(6) and 12(b)(7)).

Here, Defendants have made an explicit request for a stay on "Magleby's claim to foreclose on the bond substituted for its construction lien . . . until the arbitration process yields a decision on Magleby's damage claim." (Doc. 18 at 34.) Plaintiff opposes the request on the ground that the bond claim is not subject to the arbitration clause and, therefore, should be allowed to proceed separately from the other claims if they are dismissed. (Doc. 21 at 33.)

The bond claim is inextricably tied to Magleby's claims for compensation. In order for Magleby to recover in the bond foreclosure action, there must necessarily be a determination that Magleby is entitled to more compensation. As discussed above, such a determination must be made through arbitration. Accordingly, the Court will grant the requested stay.

### IV. Motion to Modify Protective Order

Plaintiff's motion seeking to modify this Court's protective order is rendered moot by this Order.

## CONCLUSION

IT IS ORDERED that Defendants' Motion to Dismiss and Stay Bond Foreclosure Action Pending Arbitration (Doc. 17) is GRANTED. Plaintiff's first, second, and fourth causes of action—claims for negligence and unjust enrichment—are DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(7). Plaintiff's third cause of action—bond claim—is STAYED until resolution of Plaintiff's claims for compensation are resolved through arbitration.

IT IS FURTHER ORDERED that Plaintiff's Motion to Modify Protective Order (Doc. 41) is DENIED as moot.

IT IS FURTHER ORDERED that the parties shall provide the Court with a joint status report within thirty (30) days of the conclusion of arbitration proceedings.

DATED this 25th day of August, 2023.

_Dana L. Christensen_
Dana L. Christensen, District Judge
United States District Court